**INTERNATIONAL UNION OF ELECTRICAL WORKERS et al.**

v.

**WESTINGHOUSE ELECTRIC CORP.**

**Civ. A. No. 76–720.**

United States District Court,
W. D. Pennsylvania.

Aug. 12, 1978.

Ronald L. Gilardi, Pittsburgh, Pa., for plaintiffs.

Leonard L. Scheinholtz, Pittsburgh, Pa., for defendant.

## OPINION, FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

KNOX, District Judge.

Plaintiffs being labor organizations representing employees at various Westinghouse Electric Corporation plants have brought this suit on behalf of certain members to enforce certain awards of arbitrators. The awards were made in connection with grievances resulting from terminations for disciplinary reasons. The agreement revolves around the words "without loss of seniority" as contained in the awards. The court makes the following

## FINDINGS OF FACT

(1) The plaintiffs are labor organizations and represent various employees throughout the United States.

(2) Westinghouse Electric Corporation (hereinafter referred to as the defendant) is an employer and employs numerous individual members of the plaintiff labor organizations.

(3) At all times pertinent to this suit, the plaintiffs and the defendant were parties to a national collective bargaining agreement dated June 16, 1978.

(4) The plaintiffs, in order to coordinate and administer their collective bargaining relationship with the defendant, have established the IUE-Westinghouse Conference Board.

(5) The IUE-Westinghouse Conference Board, through its elected delegates and full time officers, negotiates with the defendant and processes grievances that arise under national collective bargaining agreements.

(6) The national collective bargaining agreement that was in effect at all times pertinent to this suit and which is dated June 16, 1973, contains, in Section XIV–A, a grievance and arbitration procedure which culminates in final and binding arbitration.

(7) Prior to the collective bargaining agreement of 1973, as described above and, in fact, prior to 1963, the plaintiffs and defendant did not consistently define or apply seniority or service credits.

(8) During the course of negotiations for a national collective bargaining agreement in 1963, the defendant proposed that seniority should, for all purposes and at all locations, be uniformly defined and applied.

(9) In 1963, the plaintiffs and defendant did agree that, for all purposes and at all locations, seniority would be uniformly defined and applied.

(10) On or about September 20, 1973, an individual member of plaintiff Local 777, Devota Person, was discharged by the defendant.

(11) On or about September 29, 1972, the plaintiff Local filed a grievance on behalf of Devota Person.

(12) The Devota Person grievance was submitted to final and binding arbitration and on November 2, 1973, Arbitrator Jerome Klein issued his opinion and award.

(13) Arbitrator Jerome Klein's award, in pertinent parts provides:

I. It is the Award of the Arbitrator that Person's discharge was not for just cause.

II. It is the further Award of the Arbitrator that Person was guilty of very serious misconduct on September 20, 1972, justifying a very severe disciplinary penalty.

III. It is the further Award of the Arbitrator that Person be restored to his former job without back pay but without loss of seniority or other similar rights.

(14) On or about November 11, 1973, the defendant reinstated Devota Person to his former position.

(15) Devota Person, however, from September 20, 1972 to November 11, 1973—that is from the date of discharge to the date of reinstatement—was not credited with service or seniority

(16) In September 1974, an individual member of plaintiff Local 410, Thelma Kane, was discharged by the defendant.

(17) On or about September 9, 1974, the plaintiff Local filed a grievance on behalf of Thelma Kane.

(18) The Thelma Kane grievance was submitted to final and binding arbitration and on January 21, 1976, Arbitrator Lewis Gill issued an opinion and award.

(19) Arbitrator Lewis Gill's award, in pertinent parts, provides:

"The discharges of Thelma Kane and Helan Kolodiski are set aside in favor of reinstatement without back pay. They shall be offered reinstatement without loss of seniority or other rights and privileges (but without back pay), effective immediately in the case of Kane . ."

(20) On or about February 3, 1976, the defendant reinstated Thelma Kane to her former position.

(21) Thelma Kane, however, from September 1974 to February 3, 1976—that is from the date of her discharge to the date of her reinstatement—was not credited with service or seniority.

(22) On or about January 27, 1975, an individual member of plaintiff Local 601, Leroy Bostick, was discharged by the defendant.

(23) The plaintiff Local filed a grievance on behalf of Leroy Bostick.

(24) The Leroy Bostick grievance was submitted to final and binding arbitration and on June 1, 1976, Arbitrator Clair Duff issued his opinion and award.

(25) Arbitrator Clair Duff's award, in pertinent parts, provides:

". . . but the company shall be under no obligation to reimburse him for wages or any other benefits he has lost in the interim."

(26) On or about June 10, 1976, the defendant reinstated Leroy Bostick to his former position.

(27) Leroy Bostick, however, from January 27, 1975 to June 10, 1976—that is from the date of his discharge to the date of his reinstatement—was not credited with service or seniority.

(28) As stated, Thelma Kane, Devota Person and Leroy Bostick were not credited with service or seniority from the dates of their discharges to the dates of their reinstatements and all three individuals have suffered harm since seniority is used to determine eligibility for certain contractual benefits, rights and privileges.

(29) The defendant, in not crediting Devota Person, Thelma Kane, and Leroy Bostick with service or seniority from the dates of their discharges to the dates of their reinstatement, has been inconsistent since, in most discharge cases surveyed from 1966 to Devota Person case (1973), the defendant has credited other grievants with service from the date of a grievant's discharge to the date of a grievant's reinstatement when an arbitrator has reinstated the grievant "without loss of seniority".

(30) The defendant, in not crediting Devota Person, Thelma Kane and Leroy Bostick with service as described above, has been inconsistent since the defendant concedes that in arbitration cases in which it is determined that a discharge was not for just cause and that a grievant is to be "made whole", an arbitrator would have the authority to credit a grievant with service from the date of the discharge to the date of the grievant's reinstatement.

(31) Seniority, for all purposes, is defined in Section XII of the Collective Bargaining Agreement of June 16, 1973.

(32) Section XII of the aforesaid Agreement uses the terms "seniority", "credited service" and "accumulated length of service" synonymously.

(33) The defendant has not shown by past practice that reinstatement "without loss of seniority" has meant that a grievant would be denied seniority from the date of the discharge to the date of reinstatement. That is to say, in none of the arbitration awards submitted into evidence by the defendant did the arbitrator expressly rule that the grievant was to be reinstated "without loss of seniority".

(34) The action to enforce the Devota Person award was not brought until May 26, 1976. The actions to enforce the other wards were brought May 26, 1976 (Kane) and March 10, 1977 (Bostick).

## DISCUSSION

■ The court holds that the Devota Person claim is barred by the Pennsylvania Statute of Limitations applying to actions to confirm awards of arbitrators, 5 Purdon's PS 169 which reads as follows:

"At any time within one year after the award is made any party to the arbitration may apply to the court having jurisdiction for an order confirming the award, and thereupon the court shall grant such an order unless the award is vacated, modified, or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney five days before the hearing thereof."

The Person award was entered November 2, 1973, the employee was reinstated November 11, 1973. This action was brought May 26, 1976. When an employee is reinstated without proper seniority inevitably complications result as time goes on with respect to the status of other employees. It was not unreasonable for Pennsylvania to fix a one-year time limit on suits to enforce such awards.

■ A suit to enforce an award should be distinguished from a suit to *vacate* under 5 PS 170. Such suits must also be distinguished from suits for breach of the union's duty of fair representation where this court and our Court of Appeals have held the arbitration act does not apply and the only limitation is the six year period for suits on contracts under Pennsylvania's general statute of limitations. See *Falsetti v. UMW*, 355 F.2d 658 (3d Cir. 1966); *Liotta v. Natl Forge Co.*, CA 78–25 Erie (W.D.Pa. May 22, 1978) and Judge Teitelbaum's decision in *Fannie v. Chamberlin Mfg. Corp.*, 445 F.Supp. 65 (W.D.Pa.1977) following *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

■ This suit was brought under § 301 of the Labor Management Relations Act 29 U.S.C. § 185. As to such suits the pertinent state statutes of limitation apply, *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

■ The suits on behalf of Kane and Bostick, however, are not barred by the statutes of limitation or by laches. These suits were promptly brought within the period allowed by Pennsylvania law and we find no inexcusable delay coupled with prejudice under the ruling in *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3d Cir. 1971). No loss of evidence or disappearance of witnesses is alleged.

Turning to the main issue in the Kane and Bostick cases the court is confronted with an apparent inability to understand thoughts expressed in four words whose meaning in English is generally understood. The defendant has attempted to read ambiguities into these words which are not there to avoid complete compliance with an arbitration award. If the words had read "without loss of back pay" could there be any doubt as to their meaning?

The defendant, of course, is claiming that the arbitrator exceeded his powers under the contract, although conceding that he could have entered a "make whole" award (T. 64). Certainly in the case where a termination was entirely unjustified the arbitrator should have this power. Why may he not order something less than this in cases where the employee has been guilty of some misconduct not serious enough for discharge?

■ The arbitrator must of course draw his powers from "the essence" of the agreement. See *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969) where the court said,

"Accordingly, we hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; *only where there is a manifest disregard of the agreement*, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."

■ On the other hand, we cannot unduly restrain an arbitrator's flexibility and his expertise in fashioning an appropriate remedy in a discharge case or any other situation. *USW v. Enterprise Wheel and Car Corp,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1966).

In this case the arbitrator's relevant powers are set forth in the contract as follows:

"In any arbitration proceeding pursuant to § XIV–A hereof, concerning the determination of an employe's accumulated length of service, the arbitrator is empowered to apply the definition of Credited Service contained in ¶ 8 of § 1 of the Pension Plan (excluding sub-paragraph (b) of such paragraph 8.)."

"1. Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Section XIV, and which involves either,

(a) the interpretation or application of a provision of this agreement, or

(b) a disciplinary penalty (including discharge) imposed on or after the effective date of this Agreement, which is alleged to have been imposed without just cause, may be submitted to arbitration upon written request of either the Union or the Company, provided such request is made within 60 days after the final decision of the Company has been given to the Union pursuant to Section XIV, ¶ B.3. Employes in bargaining units covered by this agreement cannot, except through the Union, initiate or invoke the arbitration procedures set forth in this Section XIV–A. For the purpose of proceedings within the scope of (b) above, the standard to be applied by an arbitrator to cases involving disciplinary penalties (including discharge) is that such penalties shall be imposed only for just cause."

"3. (a) When a request for arbitration involves only relief from a disciplinary penalty or discharge alleged to have been imposed without just cause, or involves a dispute which the Company admits to be arbitrable or when a final court judgment shall have ordered arbitration of a request, the parties shall attempt to reach mutual agreement on the arbitrator."

■ It is not necessary that the contract set forth all the precise remedies in the arsenal the arbitrator may draw upon. It must be remembered that he also may consider the "law of the shop". See *IUE v. Peerless Pressed Metal Corp.,* 489 F.2d 768 (1st Cir. 1973) and *Ludwig Honold, supra. Signal Delivery Service v. Teamsters,* 432 F.Supp. 1233 (W.D.Pa.1977); *Teamsters v. Potter McCune Co.,* 412 F.Supp. 8 (W.D.Pa. 1976).

■ Defendant attempts to avoid this by lugging the definition of credited service for retirement into the arbitration proceeding although it appears that the pension Plan was not in evidence before the arbitrator and hence cannot be used for the purpose of resisting enforcement. *Newspaper Guild v. Washington Post Co.,* 84 LRRM 3003 (D.C.D.C.1973).

The arbitrators here did not attempt to adjudicate rights under the pension plan which was not before them. As a matter of fact arbitrator Duff in his award for Bostick states:

". . . but the company shall be under no obligation to reimburse him for wages or any other benefits he has lost in the interim."

Defendant tries to label these disciplinary discharges as "lay offs" and then points out that disciplinary layoffs are not listed as one of the items of includable time on pp. 17–18 of the pension plan (D Ex 1) This misses the whole point that these were discharges later held to be improper by the arbitrator. Therefore, except for the penalties visited upon the grievants by the arbitrator, the grievant was left in the same situation as if action to terminate had never been taken.

The court is not presently deciding the rights of Kane and Bostick under the pension plan which problems are not presently before us. We merely hold that the pension plan cannot be lugged into this case to circumscribe the powers of the arbitrators.

388

If the arbitrators had ordered the employees reinstated "*without* loss of pay and without loss of seniority" there would be no doubt as to the meaning. By the same token there should be no doubt what is meant when they say "*with* loss of pay in the interim but with no loss of seniority".

■ The court therefore holds that the awards as to Kane and Bostick were within the powers of the arbitrators and the awards as to these employees have not been fully implemented by the defendant. An appropriate order will therefore be entered.

No attorney fees or expenses will be allowed because the court finds no statutory basis for the same nor that defendant has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

## CONCLUSIONS OF LAW

(1) The plaintiffs are "labor organizations" engaged in representing "employees" in an "industry affecting commerce" as those terms are defined by Sections 2 and 501 of the Labor Management Relations Act, as amended, 61 Stat. 137, 29 U.S.C. § 142 (hereinafter referred to as the Act).

(2) The defendant is an "employer" in an "industry affecting commerce" as those terms are defined by §§ 2 and 501 of the Act, 61 Stat. 137, 29 U.S.C. § 142.

(3) Jurisdiction over this cause of action is conferred by virtue of Section 301 of the Act, 61 Stat. 156, 29 U.S.C. § 185.

(4) At all times pertinent to this suit, the plaintiffs and the defendant were parties to and were bound by the terms and conditions of a national collective bargaining agreement dated June 16, 1973.

(5) The aforesaid collective bargaining agreement provided for "final and binding" arbitration of all "disciplinary action (including discharge)."

(6) The plaintiffs submitted the discharges of Devota Person, Thelma Kane, and Leroy Bostick to final and binding arbitration as described above.

(7) The three individual grievants as named above were all reinstated to their former positions, and in all three cases, under the awards the individuals were to be reinstated "without loss of seniority".

(8) The defendant did not and has not fully complied with the arbitrators' awards in the aforesaid cases since the defendant has failed and refused to credit Devota Person, Thelma Kane, and Leroy Bostick with seniority from the dates of their discharge to the dates of their reinstatement.

(9) This cause of action is properly characterized as a suit to compel the specific enforcement of three arbitration awards and as such the enforcement of these awards is barred neither by the applicable statute of limitations nor by the doctrine of laches except as to Person.

(10) The action to enforce the award as to Person was untimely brought and is barred by the applicable statute of limitations. 5 Purdons PS 169.

(11) None of the parties is entitled to counsel fees or expenses.