UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, et al., Defendants.

In re Charges Against Robert T. SIMPSON, Jr.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Dec. 15, 1994.

---

---

## MEMORANDUM & ORDER

EDELSTEIN, Senior District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff, United States of America, against defendants, the International Brotherhood of Teamsters ("the IBT" or "the Union") and the IBT's General Executive Board. This settlement was embodied in the voluntary consent order entered March 14, 1989 ("the Consent Decree"). Among other things, the Consent Decree provides for the creation of the Independent Review Board ("the IRB"). The IRB is responsible for investigating allegations of corruption within the Union. As part of its responsibilities, the IRB is authorized to convene hearings. *See* Consent Decree at 21. During these hearings, "[a]ll parties shall be permitted to present any facts, evidence, or testimony which is relevant to the issue before the Independent Review Board." *Id.* at 21–22. Further, the Consent Decree states that "[a]ny such hearing shall be conducted under the rules and procedures generally applicable to labor arbitration hearings." *Id.* at 22.

The instant motion concerns charges that the IRB brought against Robert T. Simpson, Jr., who is the former President of IBT Local 743 in Chicago. The IRB charged Simpson with "bringing reproach upon the IBT and interfering with [Local 743's] legal obligations by allowing and condoning Donald Peters to continue to act as a representative of Local 743 and to incur expenses paid by the Local despite a prohibition against Peters

acting in this capacity."[1] *See* Simpson's Motion Papers, Ex. A (memorandum from the IRB concerning charges against Simpson). The IRB scheduled a hearing on these charges for December 20, 1994 ("the hearing").

Simpson brings the instant motion, requesting this Court to issue subpoenas requiring several witnesses to appear at the hearing. In support of this motion, Simpson has submitted a variety of papers to this Court. These papers explain that Simpson needs to subpoena Mr. Leroy Ellis, who has given deposition testimony that substantiates the charges against Simpson, because "Ellis' testimony will not withstand cross-examination by Simpson's lead counsel." *See* Simpson's Motion Papers, Motion at 2. In addition, Simpson states that he needs to subpoena "certain other industry people" because "these persons have indicated to counsel for Simpson that they are not comfortable with appearing voluntarily at the IRB hearing and would prefer to be subpoenaed." *Id.* at 3.

Simpson's papers do not include a memorandum of law, and thus, they fail to brief the Court, in any detail, on the legal basis for this motion. However, one of Simpson's papers explains:

> Simpson states that, if the IRB accepts the deposition testimony of Ellis, he will be denied due process as well as his right to confront the witnesses against him, said rights being guaranteed to him by the Fifth and Sixth Amendments to the U.S. Constitution.

Simpson's Motion Papers, Motion at 4.

The Government opposes this motion, arguing that Simpson has no right to subpoena witnesses and that none of Simpson's rights will be violated if this Court refuses to grant Simpson the power to subpoena witnesses. For the reasons discussed below, Simpson's motion is denied.

---

**1.** *See* Simpson's Motion Papers, Ex. A at 3–4 ("Peters entered into a court-approved settlement agreement with the United States under

## DISCUSSION

▪ As a threshold matter, Simpson's motion papers do not comply with the Local Rules for the Southern District of New York. Local Civil Rule 3(b) clearly states "[u]pon any motion, the moving party shall serve and file with the motion papers a memorandum setting forth the points and authorities relied upon in support of the motion." This rule warns that "[f]ailure to comply may be deemed sufficient cause for the denial of the motion." Moreover, stressing the importance of this rule, this Court's Individual Rule 4(a) states that "[m]otions must comply strictly with the Fed.R.Civ.P. and the Local Rules, particularly Local [Civil] Rule 3."

Despite both of these rules, Simpson has submitted motion papers to this Court that do not include a memorandum of law. Therefore, Simpson's motion is denied for failure to comply with Local Civil Rule 3(b).

Even if Simpson had complied with the Local Rules, however, Simpson's motion would be denied in any event because it is meritless.

Neither party's motion papers explain the source of this Court's authority to grant Simpson the power to subpoena witnesses. The Government simply assumes that this Court has this authority, while Simpson baldly asserts that this Court is authorized to issue such subpoenas under the All Writs Act ("the Act"), 28 U.S.C. § 1651. *See* Simpson's Motion Papers, McCabe Aff. at ¶ 10 ("this motion is not made pursuant to any specific rule or statute of the Court (other than the All Writs Act 28 U.S.C. § 1651)"). Under the Act, this Court has discretion to issue all appropriate writs, but Simpson has failed to demonstrate that this Court should exercise this discretion in this instance.

▪ It is clear that the Act empowers a district court to issue appropriate writs, but it does not require a court to take any specific action. *See Application of the United States of America in re: Order Authorizing the Use of a Pen Register*, 538 F.2d 956, 961 (2d Cir.1976), *rev'd on other grounds*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

which he agreed to permanently retire from all IBT positions.").

"It must be emphasized that the Act, even if found to be applicable here, is entirely permissive in nature; it in no way mandates a particular result or the entry of a particular order. It is addressed to the discretionary power of the court." *Id.*

In the instant case, Simpson argues that both the United States Constitution and principles of fairness require this Court to exercise its discretionary authority under the Act. Simpson contends that if he is not granted the subpoena power, his constitutional right to due process and his rights under the fifth and sixth amendments will be violated. *See* Simpson's Motion Papers, Motion at 4; *id.*, McCabe Aff. at ¶ 10.

 Simpson's constitutional argument is flawed. The hearing does not implicate any of Simpson's constitutional rights because the IRB is not a state actor. It is well settled that the constitutional provisions that Simpson cites only regulate the conduct of state actors, not private entities. *See United States v. International Bhd. of Teamsters*, 941 F.2d 1292, 1296 (2d Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). "To qualify as state action, the conduct in question 'must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State by a person for whom the State is responsible,' and 'the party charged with the [conduct] must be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)) (brackets in *Teamsters*). The Second Circuit held, during an earlier phase of the Consent Decree, that the Independent Administrator ("the

IA") was not a state actor for two reasons. First, although the IA brought disciplinary proceedings against Union members, the IA only brought these proceedings pursuant to the Consent Decree and the IBT Constitution. *See id.* at 1296. Thus, the IA was not a state actor because the charges were "premised on violations of Article II, section 2(a) of the IBT Constitution, not on violations of any federal or state law." *See id.* at 1296. Second, the court ruled that the IA may not be fairly said to be a state actor because "[t]he IA has offices that are provided by the IBT, and the IBT pays his salary." *Id.* Similarly, the IRB has acted solely pursuant to the authority that it derives from the Consent Decree and the Union's constitution. The IRB has only charged Simpson with violating the IBT Constitution and has not charged him with violating any state or federal law.[2] Further, the Union pays all of the IRB's costs and expenses.[3] Thus, the IRB is not a state actor.

 Simpson's constitutional argument is also flawed because, even if the IRB were a state actor, Simpson has failed to demonstrate that his due process rights[4] will be infringed if he attends the hearing without being able to subpoena witnesses. "Due process is 'flexible and calls for such procedural protections as the particular situation demands.'" *United States v. International Bhd. of Teamsters*, No. 88 Civ. 4486 (DNE), 1991 WL 243268 at *4, (S.D.N.Y. Nov. 8, 1991) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)), *aff'd*, 962 F.2d 4 (2d Cir.1992)). To insure that union members who face disciplinary proceedings receive adequate procedural protections, Congress passed the La-

---

2. The IRB has charged Simpson with violating Article II, section 2(a) and Article XIX, sections 7(b)(1) and (b)(5) of the IBT Constitution. *See* Simpson's Motion Papers, Ex. A at p. 33. The Consent Decree authorizes the IRB to bring these charges. *See* Consent Decree at 19.

3. *See* Consent Decree at 23 ("The IBT shall pay all costs and expenses of the Independent Review Board and its staff (including all salaries of Review Board members and staff).").

4. Simpson also contends that if he is not able to subpoena witnesses, "his right to confront the witnesses against him, said rights being guaranteed to him by the Fifth and Sixth Amendments

to the U.S. Constitution," will be violated. Simpson's Motion Papers, Motion at 4. However, the Second Circuit has upheld the use of hearsay testimony in disciplinary proceedings brought pursuant to the Consent Decree. *See United States v. International Bhd. of Teamsters*, 964 F.2d 1308, 1312–13 (2d Cir.1992) ("reliable hearsay is admissible in IBT union disciplinary hearings") (citing *United States v. International Bhd. of Teamsters*, 941 F.2d 1292, 1297–98 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1991)). Therefore, the use of Ellis's deposition testimony, which is hearsay testimony, at the hearing does not implicate Simpson's right to confront the witnesses against him.

bor–Management Reporting and Disclosure Act ("the LMRDA"), 29 U.S.C. § 411. The LMRDA requires a union to provide a "full and fair hearing" when the union takes disciplinary action against a union member.[5] 29 U.S.C. § 411(a)(5)(C). However, the Second Circuit has held that the power to subpoena witness is not "a requirement of a 'full and fair' hearing under section 411(a)(5)(C)." *United States v. International Bhd. of Teamsters*, No. 91–6300, Order at 3 (2d Cir. Mar. 27, 1992). As this decision indicates, constitutional due process does not require that a union member has the power to subpoena witnesses to appear at a union disciplinary hearing. Further, neither the Consent Decree nor the IBT Constitution grants Union members the right to subpoena witnesses. In sum, Simpson has no right to subpoena witnesses under the due process clause or the Consent Decree or the IBT Constitution.[6]

 Finally, Simpson's contention that notions of fairness require this Court to exercise its discretion under the Act is without merit. Simpson claims that he needs to subpoena Ellis because "Ellis' testimony will not withstand cross-examination by Simpson's lead counsel." *See* Simpson's Motion Papers, Motion at 2. However, fairness does not require that Simpson's attorneys be granted the opportunity to cross-examine Ellis at the hearing. Simpson can attack Ellis's testimony in a variety of ways: Simpson can testify that the statements are false; he can introduce any contradictory statements that Ellis made, including contradictory statements in Ellis's deposition testimony; he can present physical or documentary evidence that shows that these statements are false; and he can argue that Ellis's deposition testimony should not be given substantial weight because Ellis has not appeared at the hearing. In fact, as the Consent Decree states,

Simpson can "present any facts, evidence, or testimony which is relevant to the issue before the Independent Review Board." Consent Decree at 22.

Likewise, notions of fairness do not require that Simpson be able to subpoena witnesses that "have indicated to counsel for Simpson that they are not comfortable with appearing voluntarily at the IRB hearing and would prefer to be subpoenaed." Simpson's Motion Papers, Motion at 3. These concerns simply do not rise to a level that might render Simpson's hearing unfair.

In sum, because neither constitutional concerns nor notions of fairness require that Simpson be able to subpoena witnesses, this Court declines to exercise its discretion under the All Writs Act.

Accordingly, Simpson's motion is DENIED.

SO ORDERED.

---

**5.** Moreover, the Consent Decree provides that IRB disciplinary hearings "shall be conducted under the rules and procedures generally applicable to labor arbitration hearings." Consent Decree at 22.

**6.** Rather than arguing that the Consent Decree, the IBT Constitution, or relevant federal statutes provide a basis for his right to subpoena witnesses, Simpson contends that he has this right under the United States Constitution. It should be noted that neither the Consent Decree, the

IBT Constitution, nor any federal statute grants him this right, and that the hearing is an internal Union proceeding that solely concerns allegations that Simpson violated the Union's constitution. Further, the Second Circuit has expressed "doubt" that the LMRDA "affords union members any greater procedural protections than those which they already enjoy under the terms of the Consent Decree itself." *United States v. International Bhd. of Teamsters*, 998 F.2d 120, 126 (2d Cir.1993).