UNITED STATES of America, Plaintiffs,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

In re Charges Against Ron CAREY.

No. 88 Civ. 4486(DNE).

United States District Court,
S.D. New York.

Jan. 16, 1998.

Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano (Theodore M. Lieverman, of counsel), Haddonfield, NJ, for Election Officer, Barbara Zack Quindel.

London & Mead (Christopher B. Mead, of counsel), Washington, DC, for Jere B. Nash, III.

Mary Jo White, U.S. Atty., S.D. New York (Karen B. Konigsberg, Asst. U.S. Atty., of counsel), New York City, for U.S.

Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P. (Edward J.M. Little, of counsel), New York City, for International Broth. of Teamsters.

Goldman & Hafetz (Frederick P. Hafetz, of counsel), New York City, for Cohen, Weiss & Simon.

## ORDER

EDELSTEIN, District Judge.

### Background

This order emanates from the voluntary settlement of an action commenced by Plaintiff, United States of America, against Defendants, the International Brotherhood of Teamsters ("IBT" or "the Union") and the IBT's General Executive Board. This settlement was embodied in the voluntary consent Order entered March 14, 1989 (the "Consent Decree"). Among other things, the Consent Decree provides for the creation of the Independent Review Board ("the IRB"). The IRB is responsible for investigating allegations of corruption within the Union. As part of its responsibilities, the IRB is authorized to convene hearings. *See* Consent Decree at 21. During these hearings, "[a]ll parties shall be permitted to present any facts, evidence, or testimony which is relevant to the issue before the [IRB]." *Id.* at 21–22. Additionally, the Consent Decree states that "[a]ny such hearing shall be conducted under the rules and procedures generally applicable to labor arbitration hearings." *Id.* at 22.

### Facts

On November 25, 1997, the IRB issued a report to the Members of IBT's General

Executive Board recommending charges be brought against Ronald Carey ("Carey"), former General President of the IBT, for bringing reproach upon the IBT in violation of the IBT Constitution, Art. XIX § 7(b) and (2) and Art. II, § 2(a). *See* IRB's Proposed Charges Against IBT General President Ronald Carey ("IRB Report") at 1. Specifically, the IRB report charged Carey "for having breached his fiduciary duties to the IBT members by failing to disclose and for receiving a personal benefit in connection with union transactions he authorized." *Id.* Additionally, the IRB report stated that Carey apparently "failed to exercise his fiduciary duty to inquire into the circumstances surrounding his co-fiduciary's recommendations of unusual transactions." *Id.*

By letter dated December 3, 1997 the General Executive Board adopted and filed the charges referred by the IRB against Carey. Letter from David L Neigus, Deputy General Counsel to John J. Cronin of 12/3/97 at 1. Consistent with its prior practice, the General Executive Board referred back the filed charges against Carey to the IRB for adjudication. *Id.* The IRB scheduled a hearing on these charges for January 20 and 21, 1998.

On the eve of the IRB hearing, January 14, 1998, Carey made an application to this Court requesting an Order authorizing him to issue subpoenas to compel the attendance of witnesses and the production of documents in connection with his IRB hearing. Specifically, Carey requested the authority to issue witness subpoenas to compel the presence of Jere Nash ("Nash") and Monian Simpkins ("Simpkins"), and the authority to issue a subpoena for the production of documents form the November Group. Memorandum of Points and Authorities in Support of Mr. Carey's Request for the Issuance of Certain Subpoenas ("Carey Brief") at 1. Carey contends that the authority to issue said subpoenas is necessary in ensure him a "full and fair hearing" before the IRB. Carey Brief at 2.

In support of his application Carey states that the IRB Chief Investigator relied on two unreliable witnesses in forming the charges against him, Nash and Simpkins, and that neither of them will be present at the hearing.[1] Carey Brief at 2–3. He states that this is contrary to Section 101(a)(5) of the Labor–Management Reporting and Disclosure Act (the "LMRDA") which requires that a "full and fair hearing" must be afforded to any member that is disciplined by a union. He insists that " '[c]ourts have uniformly recognized that the right of confrontation and cross examination of witnesses is fundamental to the full and fair hearing.' " *Id.* at 4 (citations omitted).

Additionally, Carey maintains that certain documents from the November Group may cast the illegality asserted in a completely different light. *Id.* at 3. Carey thus argues that he should have access to the November Group documents before the IRB hearing and the opportunity to examine both Nash and Simpkins at the IRB hearing to ensure him a "full and fair hearing."[2] Carey recognizes that this Court is not required to grant him subpoena power but requests, out of fairness, the power to subpoena Nash and Simpkins to the IRB hearing and the authority to subpoena certain documents from the November Group before the hearing.

The Government opposes Carey's request, arguing that Carey has no right to subpoena witnesses and that none of Carey's rights will be violated if this Court refuses to grant Carey's request. For the reasons set forth below, Carey's motion is denied.

### Discussion

■ This Court has once before considered an application for subpoena power by a member of the IBT who was to appear before the IRB for a disciplinary hearing. *See United States v. International Brotherhood of Teamsters; In re Charges Against Robert T. Simpson*, 870 F.Supp. 557 (S.D.N.Y.1994). In that case, which this Court does not find dissimilar to the instant proceeding, this

---

1. The Chief Investigator intends to rely on affidavits submitted to the Election Officer by Nash and Simpkins instead of having them appear at the IRB hearing.

2. Alternatively, Carey argues that this Court can and should grant him subpoena power pursuant to the All Writs Act.

Court held that neither the IBT Constitution nor the Consent Decree afforded IBT members the right to compulsory process in connection with IRB disciplinary hearings. *See Id.* Carey, however, insists that his case is different than Simpson's because Mr. Simpson was seeking the use of general subpoena power and intended to compel the attendance of several witnesses. Carey Brief at 6 n. 1. As opposed to Mr. Simpson, Carey states that the witnesses that he proposes to subpoena are few in number and are the key witnesses "who have a powerful motive to fabricate their stories." *Id.* at 6–7. Carey also states that the IRB's position in not opposing his request to this Court is different from the IRB's position in *Simpson* and thus it distinguishes his application from that of Mr. Simpson's. This Court disagrees, but will address Carey's application on its own merits.

In support of his application, Carey relies on section 101(a)(5) of the LMRDA, which, as mentioned, prohibits a union from taking disciplinary action against a member without affording the member a "full and fair hearing." *See* 29 U.S.C. § 411(a)(5). However, as this Court noted in *Simpson,* "the Second Circuit has held that the power to subpoena a witness is not 'a requirement of a 'full and fair hearing' under section 411(a)(5)(c).'" *Simpson,* 870 F.Supp. at 561 (citations omitted). The LMRDA cannot be construed to provide subpoena power to IBT members facing disciplinary hearings where the IBT Constitution nor the Consent Decree do not confer such authority to its members. Thus, Carey's argument is without merit.

■ As for Carey's argument that this Court should grant him subpoena power pursuant to the All Writs Act, this too is unpersuasive. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, as this Court has previously noted, the All Writs Act "does not require a court to take a specific action," *Simpson,* 870 F.Supp. at 559, and this Court declines to do so here.

A union is entitled to carry out disciplinary proceedings under its own constitution where, as here, the charged party receives notice specific enough to describe the offense, the right to present evidence and witnesses, and the opportunity to cross-examine any live witnesses. *See* 29 U.S.C. § 411(a)(5). Although Carey is not permitted to subpoena witnesses, he is entitled to present evidence to rebut the charges against him and present witnesses on his behalf. He is also entitled to cross-examine any live witness called at the hearing. He is free to rebut the statements of Nash and Simpkins in many ways, including by his own testimony; by introducing testimony or hearsay statements from cooperative third parties; by introducing any inconsistent statements of the declarants themselves; and by introducing other documentary or physical evidence to support his assertions that the testimony of Nash and Simpkins is unreliable.

Applying this standard, it is evident that Carey will not be deprived of a full and fair hearing even though he is not being granted the authority to subpoena witnesses or obtain documents.[3] Accordingly, Carey's application is Hereby Denied.

SO ORDERED.

---

**3.** Furthermore, Carey's argument that he should be entitled to subpoena witnesses is contrary to the well-established notion that reliable hearsay is admissible in a disciplinary hearing under the Consent Decree, and may alone provide the basis for disciplinary action. *See United States v. IBT,* 19 F.3d 816 (2d Cir.), *cert, denied,* 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994). Indeed, this Court has noted that the use of hearsay evidence at an IRB hearing "does not implicate [the charged member's] right to confront the witnesses against him." *Simpson,* 870 F.Supp. at 560 n. 4.